No. 07-579C
(Chief Judge Damich)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BLR GROUP OF AMERICA, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

TODD M. HUGHES
Deputy Director

WILLIAM P. RAYEL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 616-0302
Facsimile: (202) 307-0972

November 14, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

QUESTION PRESENTED .......... 1

STATEMENT OF FACTS .......... 1

ARGUMENT .......... 3

I. Applicable Legal Standard .......... 3

II. This Court Does Not Possess Jurisdiction To Entertain BLR's Complaint Pursuant To The Contracts Disputes Act, Because BLR Has Not Filed A "Claim" With The Contracting Officer .......... 4

III. This Court Does Not Possess Jurisdiction To Entertain BLR's Complaint Pursuant To The CDA Because The Contracting Officer Has Not Issued A Final Decision .......... 8

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

### CASES

In re Aim Constr. & Contracting Corp., ASBCA No. 52,540,
07-1 BCA ¶ 33,466 (Dec. 28, 2006) .................... 5, 6

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) .................... 3

Alliant Techsystems, Inc. v. United States,
178 F.3d 1260 (Fed. Cir. 1999) .................... passim

G. Bliuzius Contractors, Inc., ASBCA No. 42,365,
92-1 BCA ¶ 24,605 (Nov. 22, 1991) .................... 5, 6, 8

Hart v. United States,
910 F.2d 815 (Fed. Cir. 1990) .................... 3

Holley v. United States,
124 F.3d 1462 (Fed. Cir. 1997) .................... 3, 4

Indium Corp. of America v. Semi-Alloys, Inc.,
781 F.2d 879 (Fed. Cir. 1985) .................... 3

Konoike Construction Co., ASBCA 40,910,
91-3 BCA ¶ 24,170 (July 2, 1991) .................... 5

LeBlanc v. United States,
50 F.3d 1025 (Fed. Cir. 1995) .................... 4

Record Steel and Constr., Inc. v. United States,
62 Fed. Cl. 508 (2004) .................... 6, 7, 8

Reflectone, Inc. v. Dalton,
60 F.3d 1572 (Fed. Cir. 1995) .................... 4

In re TLT Construction Corp., ASBCA No. 53,769,
02-2 BCA ¶ 31,969 (Aug. 26, 2002) .................... 5, 6, 8

United States v. Testan,
424 U.S. 392 (1972) .................... 3, 4

## STATUTES AND REGULATIONS

28 U.S.C. § 1491 .................................................. 4

28 U.S.C. § 1491(a) .................................................. 1, 2

28 U.S.C. § 1491(a)(2) .................................................. 4

41 U.S.C. § 605(a) .................................................. 9

48 C.F.R. § 33.211(a)(4) .................................................. 9

48 C.F.R. § 36.201(a)(1) .................................................. 6

48 C.F.R. § 42.1502(a) .................................................. 6

48 C.F.R. § 52.233-1(c) .................................................. 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BLR GROUP OF AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 07-579C |
| | ) | (Chief Judge Damich) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS

Defendant, the United States, respectfully requests that this Court dismiss the complaint of plaintiff BLR Group of America, Inc. ("BLR") for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of this Court ("RCFC").

## QUESTION PRESENTED

Whether this Court lacks subject matter jurisdiction to adjudicate BLR's claims regarding its performance evaluation, which are not cognizable under the Tucker Act, 28 U.S.C. § 1491(a).

## STATEMENT OF FACTS[1]

On April 14, 2006, the United States Air Force ("Air Force") awarded BLR a commercial item contract, No. FA4452-06-C-0003, to provide Air Traffic Management support services to the Directorate of Communications and Information's Air Traffic Management Systems Office. Compl. 2. The contract required BLR to provide "functional, technical liason, and analytical support in accordance with the Performance Work Statement." Id. The contract was awarded for one base year and four option years. Id.

[1] For the sole purpose of this motion, we will treat the allegations in BLR's complaint as true.

Shortly before entering into the contract with the Air Force, BLR alleges that it entered into a subcontract with an independent contractor. Id. at 4. On June 8, 2006, the subcontractor abruptly terminated his relationship with BLR. Id. BLR alleges that, during the time the subcontractor was working with BLR, it observed an "inappropriately close personal relationship" between the subcontractor and one of the Quality Assurance Personnel ("QAP") on the contract. Id. The QAPs were responsible for assigning tasks to BLR under open-ended provisions of the contract and monitoring BLR's performance. Id. at 3-4.

During contract performance, relations between BLR and Air Force personnel became strained and the Air Force became dissatisfied with BLR's work. Id. at 4, 7. The Air Force rejected two of BLR's deliverables based upon technical deficiencies. Id. at 7. On September 26, 2006, the Air Force terminated the contract for convenience. Id.

On November 21, 2006, the Air Force prepared a Contractor Performance Assessment Report ("CPAR") evaluating BLR's performance under the contract. Id. at 8. BLR was rated "marginal" in all four areas rated: 1) Quality of Product/Service; 2) Schedule; 3) Business Relations; and 4) Management of Key Personnel. Id. On January 12, 2007, BLR submitted comments disagreeing with its original CPAR evaluation, to be displayed when the CPAR was loaded into the Naval Sea Logistics Center's Past Performance Information Retrieval System ("PPIRS database"). Id. at 10. On February 7, 2007, the Air Force issued its final CPAR, which made a minor correction to the original CPAR, but left the ratings of "marginal" unchanged. Id.

The CPAR was then loaded into the PPIRS database for procurement officials to review when making procurement decisions. Id. at 11. The final CPAR is displayed first, followed by a

section entitled "Contractor Comments," which includes the original November 21, 2006 evaluation, followed by BLR's January 12, 2007 comments on the original evaluation. Id. at 11.

On August 1, 2007, BLR filed a complaint requesting that this Court: 1) declare the Air Force's CPAR false and prejudicial and direct the Air Force to revise or rescind the CPAR; 2) declare the PPIRS format unfairly prejudicial and direct the Air Force to revise the PPIRS version or rescind the CPAR; and 3) award BLR costs and any further relief deemed just and proper. Id. at 12.

## ARGUMENT

### I. Applicable Legal Standard

It is axiomatic that, if this Court does not possess subject matter jurisdiction to entertain the claims in the complaint, the complaint must be dismissed. RCFC 12(b)(1). In deciding a RCFC 12(b)(1) motion, "determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1464 (Fed. Cir. 1997) (citations omitted). Where this Court's subject matter jurisdiction is placed in issue, the non-moving party bears the burden of establishing jurisdiction. Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (quoting Hart v. United States, 910 F.2d 815, 817 (Fed. Cir. 1990)). Moreover, in deciding a motion to dismiss for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1), the Court may consider evidentiary matters outside the pleadings. Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985).

The jurisdiction of this Court is limited; Congress has only granted this Court jurisdiction to entertain claims where the United States has waived its sovereign immunity from suit. United

States v. Testan, 424 U.S. 392, 399 (1972). The Tucker Act, 28 U.S.C. § 1491, governs the United States' waiver of sovereign immunity from suit in this Court:

> This statute confers jurisdiction on the Court of Federal Claims, and a corresponding waiver of the government's sovereign immunity from suit, when the constitutional provision, statute, or regulation in question expressly creates a substantive right enforceable against the federal government for money damages.

LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (citation omitted). Because the Tucker Act is merely a jurisdictional statute, however, it creates no substantive right to relief in suits against the United States. Testan, 424 U.S. at 398. Accordingly, a plaintiff in this Court must identify a contract or money-mandating constitutional provision, statute, or regulation that entitles it to relief. Holley, 124 F.3d at 1465 (citations omitted).

## II. This Court Does Not Possess Jurisdiction To Entertain BLR's Complaint Pursuant To The Contracts Disputes Act, Because BLR Has Not Filed A "Claim" With The Contracting Officer

The Tucker Act grants this Court jurisdiction over certain CDA "claims," including "other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of [the CDA]." 28 U.S.C. § 1491(a)(2). If the contractor has not submitted a "claim" and the contracting officer has not issued a "final decision," then this Court does not possess jurisdiction to entertain the plaintiff's complaint. Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1264 (Fed. Cir. 1999) (citation omitted). The CDA leaves the term "claim" undefined, and thus the Court must look to the Federal Acquisition Regulations ("FAR"), to determine what is necessary for a contractor's submission to be deemed a claim. Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (in banc). The FAR defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a

matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to the contract." 48 C.F.R. § 52.233-1(c) (emphasis added).

The United States Court of Appeals for the Federal Circuit has held that the term "as a matter of right" means that "the claim must be a demand for something due or believed to be due." Alliant, 178 F.3d at 1265 (citations omitted). Here, BLR has not asserted any contractual ground upon which it is entitled to a specific performance evaluation. In fact, BLR has not asserted any ground, whatsoever, upon which it would be entitled to a performance evaluation, period. Furthermore, BLR has not asserted any ground upon which it is entitled to have its comments displayed in a certain manner in the PPIRS database. As such, BLR has not requested any of the relief related to its complaint from the contracting officer or this Court "as a matter of right." Therefore, BLR has not submitted a claim to the contracting officer and this Court does not possess jurisdiction to entertain this suit.

Furthermore, the Federal Circuit has held that the 1992 amendments that added the language to the Tucker Act providing for jurisdiction to consider such "nonmonetary claims" were intended to ensure that the Court of Federal Claims had "jurisdictional parity" with the boards of contract appeals. Alliant, 178 F.3d at 1269-70 (citing Garrett v. General Electric Co., 987 F.2d 747 (Fed. Cir. 1993)). The boards of contract appeals have consistently held that they do not possess jurisdiction to amend or rescind performance evaluations, both prior to and after the 1992 amendments were implemented. See In re TLT Construction Corp., ASBCA No. 53,769, 02-2 BCA ¶ 31,969 (Aug. 26, 2002); G. Bliuzius Contractors, Inc., ASBCA No. 42,365, 92-1 BCA ¶ 24,605 (Nov. 22, 1991); Konoike Construction Co., ASBCA 40,910, 91-3 BCA ¶

24,170 (July 2, 1991); cf. In re Aim Constr. & Contracting Corp., ASBCA No. 52,540, 07-1 BCA ¶ 33,466 (Dec. 28, 2006) (holding that board did not possess jurisdiction to entertain a claim for monetary damages for unsatisfactory performance evaluation). Indeed, the boards have specifically held that a request for review of a performance evaluation is not a "claim" pursuant to the CDA. TLT, 02-2 BCA ¶ 31,969 ("A performance evaluation under a contract is an administrative matter not a Government claim, and a contractor's request that contractor change an evaluation is not a contractor claim") (emphasis added) (citation omitted); G. Bliuzius, 92-1 BCA ¶ 24,605 (citation omitted). Therefore, Federal Circuit precedent requires that this Court dismiss BLR's complaint.

The Government is aware of Record Steel and Constr., Inc. v. United States, 62 Fed. Cl. 508 (2004), where this Court held that a plaintiff could challenge its performance evaluation. Record Steel is distinguishable from the instant case and, in any event, we respectfully submit that it was wrongly decided. First, in Record Steel, the Court held that the contracting agency was required to prepare a performance evaluation pursuant to 48 C.F.R. § 36.201(a)(1). Id. at 519. Record Steel is distinguishable because the contract at issue is not a construction or architect/engineer contract, therefore, the general provision of the FAR regarding performance evaluations applies, 48 C.F.R. § 42.1502(a), rather than 48 C.F.R. § 36.201(a)(1). Section 42.1502(a) states "agencies shall prepare an evaluation of contractor performance for each contract that exceeds the simplified acquisition threshold at the time the work under the contract is completed." Id. (emphasis added). Here, the contract was terminated for convenience, therefore, the "work under the contract" was never "completed." Compl. 7. Therefore, BLR is

not entitled to any performance evaluation, let alone a specific performance evaluation they deem satisfactory.

Also, in Record Steel, the contractor brought a primary claim seeking an equitable adjustment upon the ground that the Government had made a constructive change in the contract by requiring certain "over-excavation" tasks. Id. at 510-11. As the Court explained, "the crux of the parties' dispute is whether the contract at issue required over-excavation." Id. The contractor's claim regarding its performance evaluations was a derivative claim: According to the contractor, the erroneous performance evaluations of the Government were based upon the Government's erroneous determination that the contract required over-excavation. Id. Therefore, the contractor's claim for nonmonetary relief was specifically related to the contract terms.

Here, the "crux of the parties' dispute" is not a contract term. Rather, the dispute is primarily about whether one of the QAPs was biased and whether BLR's deliverables were technically deficient. The only issue BLR raised in its complaint that may relate to the interpretation of contract terms was its allegation that the QAP required BLR personnel to be on base at all times, which they allege was not a contract requirement. Compl. 5. If the Court follows Record Steel, and finds that Record Steel is not distinguishable based upon the different FAR provision that is applicable in this case, then it should only allow BLR to challenge any alleged misinterpretations of contractual terms in the CPAR.

In any event, Record Steel is contrary to Federal Circuit precedent. As noted above, the Federal Circuit has held that the 1992 amendments that added the language to the Tucker Act providing for jurisdiction to consider "nonmonetary claims" were intended to ensure that the

Court of Federal Claims had "jurisdictional parity" with the boards of contract appeals. Alliant, 178 F.3d at 1269-70 (citation omitted). The boards of contract appeals have consistently held that they do not possess jurisdiction to entertain challenges to performance evaluations because a challenge to a performance evaluation is not a CDA claim. TLT, 02-2 BCA ¶ 31,969; G. Bliuzius, 92-1 BCA ¶ 24,605. Because it rejected the board precedent that a challenge to a performance evaluation is not a CDA claim, the Court's decision in Record Steel is contrary to the Federal Circuit precedent in Alliant, which held that the 1992 amendments to the Tucker Act were designed to ensure that this Court and the boards of contract appeals have "jurisdictional parity."[2] Furthermore, the Record Steel Court failed to identify any contractual provisions giving the contractor a right to a specific performance evaluation, therefore, the contractor's challenge to its performance evaluation was not "as a matter of right." Unless a contract contains a clause giving the contractor a right to a certain type of performance evaluation, a challenge to a performance evaluation cannot be a CDA "claim" and this Court does not possess jurisdiction to entertain such a complaint.

III. This Court Does Not Possess Jurisdiction To Entertain BLR's Complaint Pursuant To The CDA Because The Contracting Officer Has Not Issued A Final Decision

In addition to the fact that BLR has not submitted a "claim" pursuant to the CDA, the contracting officer has also not issued a "final decision" pursuant to the CDA. As noted above, if the contracting officer has not issued a "final decision," then this Court does not have

[2] The Record Steel Court also distinguished TLT upon the basis that the boards do not have the authority to grant injunctive relief, while this Court does. 62 Fed. Cl. at 520. This distinction is immaterial in light of the holding of the boards that a challenge to a performance evaluation is not a CDA claim. That alone is enough to divest this Court (and the boards) of jurisdiction to entertain a challenge to a performance evaluation.

jurisdiction to entertain the plaintiff's complaint. Alliant, 178 F.3d at 1264 (citation omitted). The FAR requires that a "final decision" be in writing and include certain elements, including: 1) a description of the claim or dispute; 2) a reference to the pertinent contract terms; 3) a statement of disputed and undisputed facts; 4) a statement of the contracting officer's decision, with supporting rationale; and 5) appeal rights. 41 U.S.C. § 605(a); 48 C.F.R. § 33.211(a)(4).

Here, BLR alleges two "final decisions." BLR alleges that the issuance of the final CPAR evaluation was a final decision and that the failure of "the Government" to delete the original CPAR from the PPIRS database was a final decision. Compl. 10-11. However, BLR has not alleged that either the final CPAR, nor whatever correspondence it alleges denied its request to delete the original CPAR from the PPIRS database, included any of the elements required of a final decision. Nor could BLR make such allegations. The CPAR evaluation was not conducted in response to provisions of the contract, much less a claim. Thus, the CPAR inherently will not reflect any characteristic of a contracting officer final decision, nor any other aspect of a contract dispute pursuant to the CDA, which is why this Court is without jurisdiction to consider BLR's requests regarding the CPAR.

The Federal Circuit has held that a "final decision" need not contain "standard language announcing that it constitutes a final decision" and has allowed a letter that did not give appeal rights, but stated that a the contractor's contractual interpretation was wrong and directed the contractor to continue working, constituted a final decision. Alliant, 178 F.3d at 1267-68 (citing Placeway Constr. Corp. v. United States, 920 F.2d 903, 907 (Fed. Cir. 1990)). However, in this case, it was not simply a matter that certain standard language for appeal rights was not included. Rather, the issuance of the final CPAR and formatting of the PPIRS database were

administrative decisions, not decisions pursuant to the contract, therefore, they are not the contracting officer's final decisions required by the CDA, and do not contain the elements of a final CDA decision, which is why this Court does not possess jurisdiction to consider BLR's requests regarding the CPAR.[3]

Thus, because the contracting officer has not issued "final decisions" on what BLR alleges were its "claims," this Court does not possess jurisdiction to entertain BLR's complaint.

## CONCLUSION

For the foregoing reasons, this Court should dismiss BLR's complaint.

[3] Further highlighting this point, BLR has not even alleged that the final CPAR evaluation was issued by the contracting officer, nor that whatever correspondence it alleges denied its request to delete the original CPAR from the PPIRS database was written by the contracting officer. In fact, BLR alleges that it requested that the reviewing official (the person who issued the final CPAR), not the contracting officer, delete the original CPAR from the PPIRS database, and the refusal of the "Government" was a final decision. Compl. 11. In any event, the PPIRS database is controlled by the Naval Sea Logistics Center, not the contracting officer. Id. at 1.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Todd M. Hughes

TODD M. HUGHES
Deputy Director

/s/ William P. Rayel

WILLIAM P. RAYEL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 616-0302
Facsimile: (202) 307-0972

November 14, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 14th day of November, 2007, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

/s/ William P. Rayel