IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BLR GROUP OF AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-579c |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |

**BLR GROUP'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff BLR Group of America, Inc. ("BLR Group") hereby opposes the motion to dismiss filed by Defendant the United States of America (the "Air Force").

This matter concerns the Air Force's issuance and publication of a false and highly prejudicial performance evaluation relating to work performed by BLR Group on its contract with the Air Force. BLR Group seeks declaratory and injunctive relief to require the Air Force to correct or delete the improper evaluation. This Court possesses subject matter jurisdiction over this matter pursuant to the Tucker Act, 28 U.S.C. § 1491, *et seq.* and the Contract Disputes Act, 41 U.S.C. § 601, *et seq*. ("CDA"). BLR Group properly appealed the Air Force's final decision to not change or delete the performance evaluation. The Air Force's attempt to distinguish or have the Court of Federal Claims overturn its own decision in Record Steel, which serves as highly persuasive authority for the Court's jurisdiction over this mater, is without merit and should be rejected.

**BACKGROUND – PERFORMANCE EVALUATIONS**

The Federal Acquisition Regulation, Title 48 of the Code of Federal Regulations ("FAR") obligates the Air Force to issue performance evaluations at the completion of federal contracts (but the FAR does not require an evaluation after a termination for the convenience of the government) that exceed the simplified acquisition threshold. See 48 C.F.R. §42.1502(a). Federal agencies,

including the Air Force, utilize a Contractor Performance Assessment Report System ("CPARS") to comply with this requirement. The CPARS evaluation process is supposed to be conducted in a manner that will "ensure accurate data on contractor performance." See Contracting Performance Assessment Reporting System Guide, Department of Defense, § 1.2, relevant pages attached hereto as Exhibit A. Moreover, a 1992 Policy Letter issued by the Office of Federal Procurement Policy (OFPP) requires that the Government's procedures for collecting and using past performance information reflect "integrity and fairness." OFPP Policy Letter 92-5 (Dec. 30, 1992) ¶ 5 (rescinded on March 30, 2000, but recently taken judicial notice of by the United States Court of Appeals for the Federal Circuit in Bannum, Inc. v. U.S., 404 F.3d 1346, 1352 n.2 (2005)). The completed evaluation is supposed to be reviewed by an individual with personal knowledge of the contractor's job performance and at a supervisory level above that of the evaluating official. See 48 C.F.R. §§ 1503(a), (b). This process is designed to ensure the integrity and fairness of the evaluation.

Once finalized, the performance evaluation (also referred to as "CPAR") is then published in the Past Performance Information Retrieval System ("PPIRS") where the information is made available to procurement officials. See Compl. at ¶ 51. The information is used by the Government in deciding to award future contracts. Id.; 48 C.F.R. §42.1503(c). The need for accuracy and fairness of the information stored in PPIRS cannot be understated – contractors with unsatisfactory or marginal performance evaluations likely will not receive Government contracts when bidding against contractors who have better performance evaluations.

**BACKGROUND – BLR GROUP'S EVALUATION**

On or about April 14, 2006, the Air Force awarded BLR Group a commercial items contract, No. FA4452-06-C-0003, to provide Air Traffic Management support services to the Directorate of Communications and Information's Air Traffic Management System Office (AMC/A67) (the

"Contract"). Compl. at ¶ 8. BLR Group's performance under the Contract went smoothly until the unexpected departure of BLR Group's subcontractor. Id. at ¶¶ 16-17. Nevertheless, BLR Group was fully prepared and in fact did perform well under the Contract. After the subcontractor's departure, however, the Air Force wholly failed in its duty to cooperate with BLR Group. Id. at ¶¶ 17-35. In fact, the Air Force began to hinder BLR Group's performance by imposing unreasonable requirements and by unreasonably monitoring and evaluating BLR Group's performance. Id. The Air Force ultimately terminated the Contract for its convenience on or about September 26, 2006. Id. at ¶ 36.

On November 21, 2006, the Air Force issued a CPAR evaluating BLR Group's performance on the Contract. Compl. at ¶ 42. The CPAR contained numerous misrepresentations and inaccuracies. See Compl. at ¶¶ 44-45. Moreover, the Air Force included the QAP in the CPARS evaluation process over BLR Group's objections and concerns regarding her partiality.[1] Id. at ¶¶ 40-41. BLR Group advised Nancy Kreke, the Assessing Official (who ***also*** served as the Contracting Officer) that the CPAR assessment of BLR Group's performance was unfair and requested a meeting to discuss it. See November 27, 2006 letter to Nancy Kreke, attached hereto as Exhibit B. After meeting with the Assessing Official, the QAP, and other Air Force personnel to discuss the inaccuracies and misrepresentations contained in the CPAR evaluation, BLR Group timely submitted its written comments on January 12, 2007. Id. at ¶¶ 44-48; BLR Group claimed as a matter of right that its work merits a CPARS rating of at least "satisfactory" in all categories. Id. On or about February 7, 2007, the Air Force re-issued the CPAR evaluation without making any of the

1. BLR Group alleges that its incorrect marginal rating was generated out of animosity by an Air Force personnel who was responsible in part for the CPARS evaluation and that animosity grew from that person's relationship with BLR Group's former subcontractor. See Compl. at ¶ 13, 40-41.

substantive changes requested by BLR Group and did not change the marginal ratings, effectively denying the relief requested. Id. at ¶¶ 49-50.

The Air Force subsequently published the CPAR evaluation in the PPIRS database, which is available to procurement officials. Id. at ¶ 51. The CPAR evaluation is displayed to show the damaging and inaccurate assessment twice before presenting BLR Group's substantive rebuttal. Id. On or about March 5, 2007, BLR Group requested the Reviewing Official to delete the original narrative from the database version because it unduly prejudiced BLR Group, leaving only the Air Force's final narrative and BLR Group's comments. Id. at ¶ 54. The Air Force denied the request. Id. BLR Group's CPAR evaluation remains unchanged in the PPIRS database.

## ARGUMENT

When deciding a motion to dismiss, the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." Roxco, Ltd. v. U.S., 77 Fed.Cl. 138, 142 (2007); GPA-I, LP v. U.S., 46 Fed. Cl. 762, 766 (2000). A plaintiff need only set forth a prima facie showing of jurisdictional facts to survive a motion to dismiss. Id. The Court may consider evidentiary materials outside the pleadings in deciding a motion to dismiss. Roxco, 77 Fed. Cl. at 142 (citing Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583-83 (Fed. Cir. 1993).

### I. BLR Group's Request for Correction or Removal of its CPAR are claims within the Court's jurisdiction under the Contract Disputes Act.

The Air Force contends the Court does not possess jurisdiction over BLR Group's claims. Assuming all of BLR Group's allegations are true, this Court possesses jurisdiction over BLR Group's claims. The Court indisputably has jurisdiction under 28 U.S.C. § 1491(a)(2), which provides:

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the

> Contract Disputes Act of 1978, including a dispute concerning . . . nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of the Act.

For a contractor's communication to the government to be made "as a matter of right", and thus a proper CDA claim, requires "only that the contractor specifically assert entitlement to the relief sought. That is, the claim must be a demand for something due or believed to be due rather than, for example, a cost proposal for work the government later decides it would like performed." Alliant Techsystems, Inc. v. U.S., 178 F.3d 1260, 1265 (Fed. Cir. 1999); see also GPA-I, LP v. U.S., 46 Fed. Cl. 762, 766 (2000) (quoting Alliant and citing Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1576 (Fed. Cir. 1995) (en banc) (a "claim" is "a written demand seeking a sum certain (or other contract relief) as a matter of right")). "The request need not be explicit, but only show "an expression of interest,' which may be made implicitly." GPA-I, LP, 46 Fed. Cl. at 767 (citing Transamerica Ins. Corp. v. U.S., 973 F.2d 1572, 1578 (Fed. Cir. 1992)).

As described above, BLR Group's written comments to the initial CPAR evaluation claimed entitlement to the relief of a corrected CPAR and at least impliedly requested a final decision on the requested relief. BLR Group explained why the CPAR was unfair and inaccurate and required the ratings be adjusted to properly reflect BLR Group's performance (and the Air Force's unreasonable requirements and conduct) under the Contract. See Comp. at ¶¶ 18-35, 48. The Air Force, acting through the Assessing Official/Contracting Officer and the Reviewing Official (the immediate supervisor of the Contracting Officer), denied the relief by publishing the CPAR evaluation without making the changes requested by BLR Group. See Compl. at ¶¶ 49-50. After the final CPAR evaluation was published in the PPIRS database, BLR Group demanded in writing that the CPAR be corrected. See March 7, 2007 e-mail from L. Shapiro to E. Hassenplug, the Reviewing Official, attached hereto as Exhibit C. Once again, the Air Force issued a final decision by refusing to correct

the CPAR in the PPIRS database. Accordingly, the Court has jurisdiction under 28 U.S.C. § 1492(a)(2) to render judgment upon BLR Group's claim that it is entitled to a corrected CPAR. See Compl. at ¶ 54.

The precise issue before the Court was addressed by this Court in Record Steel and Const., Inc. v. U.S., 62 Fed.Cl. 508 (2004). In Record Steel, the plaintiff contractor sued the Government in the U.S. Court of Federal Claims to recover additional costs incurred during the performance of a construction project. The contractor also sued for declaratory and injunctive relief in connection with "marginal" performance evaluations issued by the Government. The Court expressly held that it was vested with jurisdiction to review contractor performance evaluations pursuant to the Tucker Act. Id. at 520. As with the contractor in Record Steel, BLR Group performed work for the Government and was given a CPAR evaluation that fell well short of what it should have been. After exhausting the remedies and procedures available at the administrative level, BLR Group properly sought review of the Air Force's actions in this Court.

The Air Force attempts to distinguish Record Steel by first arguing that the decision was based on the regulatory authority mandating a CPAR evaluation in that case—46 CFR § 36.201(a)(1). The Air Force claims that the performance evaluation was not mandatory here because the applicable FAR provision only requires CPAR evaluations be prepared "at the time the work under the contract is completed."[2] See 48 C.F.R. § 42.1502. While the Air Force contradicts its earlier statement to BLR Group that it had prepared the CPAR evaluation as required by the FAR, see e-mail from Nancy Kreke dated Nov. 21, 2006, attached hereto as Exhibit D, this is a distinction

2. The Air Force curiously argues that that BLR Group was not "entitled" to a CPARS, yet it has refused BLR Group's request to delete the CPARS. In essence, the Air Force is arguing that BLR Group would only have the right to judicial review for an incorrect evaluation if it was "entitled" to one, but BLR Group has no recourse if the Air Force prepares a CPARS on its own whim. This does not comport with the finding of Record Steel that the Court has jurisdiction over a disputed CPARS evaluation, nor with the fundamental concept of due process.

without substance. Regardless if BLR Group was entitled to a performance evaluation, there is no question that the Air Force issued and published the CPAR evaluation. Once the Air Force conducted the CPAR, BLR Group was entitled to a fair and accurate evaluation. Moreover, much like the case in Record Steel, the Air Force here was required to—and did in fact—provide an opportunity for BLR Group to comment on the CPAR. 48 C.F.R. § 42.1503(b); Compl. at ¶¶ 46-48. Thus, BLR Group has the right under the FAR to comment on the CPAR evaluation issued by the Air Force. The Air Force's final decision against BLR Group's claim that the CPAR was false and highly prejudicial is the issue before the Court, not whether or not BLR Group was "entitled" to a CPAR evaluation.

Second, the Air Force attempts to distinguish Record Steel by arguing that the declaratory relief sought by the contractor was merely a "derivative" claim arising from the underlying breach of contract claim. In other words, according to the Air Force, this Court only has jurisdiction over claims which seek a monetary award arising from contract, and in the absence of a monetary claim, the provisions of the Tucker Act providing for equitable relief are not available.

It is true that the Tucker Act originally did not vest the Claims Court with jurisdiction over nonmonetary claims. See e.g., U.S. v. King, 395 U.S. 1, 89 S.Ct. 1501 (1969). However, with the enactment of amendments to the Tucker Act in 1992, Congress expressly granted this Court jurisdiction over specific non-monetary claims "including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other non-monetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act." See 28 U.S.C. § 1491(a)(2). Interpreting the 1992 amendment to the Tucker Act, courts have held that the Claims Court has jurisdiction over non-monetary claims such as conversion of a default termination to a termination for convenience, Claude E. Atkins Enterprises,

Inc. v. U.S., 15 Cl.Ct. 644 (1988); review of performance evaluations, Record Steel, supra; and the declaration of rights under a contract, Alliant Techsystems, Inc. v. U.S., 178 F.3d 1260 (Fed. Cir. 1999), among other things. It is also important to note that the court in Record Steel made no distinction in its opinion about the non-monetary claims having to be presented with monetary claims in order to invoke the jurisdiction granted under the Tucker Act. On the contrary, the Court addressed each of the contractor's claims separately, and expressly found that it had jurisdiction over the contractor's request for declaratory relief. Record Steel, 62 Fed.Cl. at 520.

Moreover, BLR Group's action arises from a written contract. In fact, BLR Group is appealing the performance evaluation rendered in connection with the written contract with the Air Force and has pleaded as much in its complaint. See Compl. at ¶¶ 18-35, 48, 53-54. The fact that BLR Group is not seeking monetary relief (aside from the fees and costs associated with this action) makes no difference. As the Court pointed out in Record Steel, the FAR defines a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract." Id. at 518, quoting 48 C.F.R. §52.233-1(c). Without question, the unsatisfactory performance evaluation rendered by the Air Force arose out of and is related to its contract with BLR Group.

Finally, the Air Force argues that Record Steel was wrongly decided. In support, the Air Force relies on decisions issued by the boards of contract appeals and suggests this Court must adhere to those decisions to ensure "jurisdictional parity." The Air Force's reliance, however, is misplaced. The Court in Alliant did not subject the Federal Circuit to the authority of the boards of contract appeals. Rather, the Court noted that the 1992 Amendments to the CDA expanded the jurisdiction of the Court to include nonmonetary/declaratory authority. Alliant, at 178 F.3d at 1269-

70 (citing Garrett v. General Electric Co., 987 F.2d 747, 750-51 (Fed. Cir. 1993)). The Court held that the boards' jurisdiction were similarly inclusive. Id. The jurisdictional parity sought by the court confirmed that both the Court of Federal Claims and the board of appeals have jurisdiction to entertain monetary as well as nonmonetary claims. See id. It did ***not*** find that the jurisdiction of the Federal Circuit is subject to rulings by the board of appeals. The Court is not bound by decisions from the boards. The Court properly rejected Appeal of TLT Construction Corp., 2002 ASBCA LEXIS 92, ASBCA No. 53,769, 02-2 BCA P 31,969 (Aug. 26, 2002), which the Air Force relies on here, as not being persuasive authority on this Court's jurisdiction. Record Steel, 62 Fed.Cl. at 520.

The Court of Federal Claims has never ruled that it lacks jurisdiction to review claims arising from improper performance evaluations. The only decision by the Court on this issue—Record Steel— provides the most persuasive authority for the Court to retain jurisdiction. The well-settled doctrine of stare decisis should guide this Court to follow its earlier decision in Record Steel. See Fla. Power & Light Co. v. U.S., 41 Fed. Cl. 477, 485-86 (1998), *rev'd on other grounds*, 198 F.3d 1358 (Fed. Cir. 1999). Stare decisis makes each judgment a statement of law or precedent binding in future cases before the same court or another court owing obedience to its decision. Id. (citing Mendenhall v. Cedarapids, Inc., 5 F.3d 1557, 1570 (Fed. Cir. 1993). The doctrine counsels a court to follow its own previous decisions unless and until they have been overruled or undermined by the decision of a higher court or a statutory overruling. Id. (citing 18 James Wm. Moore, Moore's Federal Practice § 134.02[1][a]). Thus, the Court should follow its ruling in Record Steel and dismiss the Air Force's motion.

## II. The Air Force's Refusal to Correct or Delete the CPAR Represents a Final Decision.

The Air Force asserts that BLR Group's requests to correct the CPAR evaluation and PPIRS database are not claims because the Air Force did not issue a "final decision." The Air Force's position is unsupported by law and the facts. Indeed, the Court has already found a contractor's claim that a CPAR evaluation is erroneous is a cognizable claim under the CDA. Record Steel, 62 Fed. Cl. at 520. To constitute a claim under the CDA, the contractor must demand something due or believed to be due. Alliant, 178 F.3d at 1267-68. In addition, "while CDA claims must request a contracting officer's final decision, a request for a final decision can be implied from the context of the submission." GPA-I, 46 Fed. Cl. at 767 (citing and quoting James M. Ellett Constr. Co. v. U.S., 93 F.3d 1537, 1542-43 (Fed. Cir. 1996)). Moreover, a "letter can be a final decision under the CDA even if lacks the standard language announcing that it constitutes a final decision." Alliant, 178 F.3d at 1267-68 (finding government's unequivocal rejection of contractor's arguments indicated that the contracting officer's decision was effective and not subject to further discussion); see also Volmar Const., Inc. v. U.S., 32 Fed. Cl. 746, 754-55 (contracting officer's denial "need not bear the magic words 'final decision' or contain information concerning the contractor's appeal rights to qualify as a valid contracting officer's final decision."); Placeway Constr. Corp. v. U.S., 920 F.2d 903, 907 (Fed. Cir. 1990) ("The decision is no less final because it failed to include boilerplate language usually present for the protection of the contractor.").

The Air Force's decision was certainly final with respect to the its disposition of BLR Group's claim regarding its CPAR evaluation. Indeed, the Air Force's refusal to make any of BLR Group's requested material changes and the publication of the CPAR evaluation in the PPIRS database is as final as you can get. The Air Force left no room for additional negotiation. Further, the decision was issued by the Assessing Official, who as noted above also served as the Contracting

Officer, and the Reviewing Official, who is the Contracting Officer's immediate supervisor. The Air Force's unequivocal rejection of BLR Group's arguments that the CPAR evaluation should be revised or otherwise removed from the PPIRS database constitutes a final decision. See Alliant, 178 F.3d at 1267-68. BLR Group is left with no alternative but to seek appeal with this Court.

## CONCLUSION

BLR Group has clearly set forth a legitimate claim for nonmonetary relief under the Contract Disputes Act. Thus, the Court should deny the Air Force's motion and grant BLR Group such other and further relief as required by law.

## REQUEST FOR ORAL HEARING

BLR Group respectfully requests the Court to set this matter for oral hearing.

Respectfully submitted,

/s/ Timothy F. Noelker
Timothy F. Noelker
(Counsel of Record)
Linda L. Shapiro
Ryan K. Manger
THOMPSON COBURN LLP
One U.S. Bank Plaza
St. Louis, Missouri 63101
314-552-6000
FAX 314-552-7000

Thomas F. Hennessy, III, #01190156
GREENSFELDER, HEMKER & GALE, P.C.
12 Wolf Creek, Suite 100
Swansea, IL 62226
618-257-7308
FAX 618 257-7353

Attorneys for BLR Group of America, Inc.

DATED: December 12, 2007

CERTIFICATE OF FILING

I hereby certify that on this 12th day of December, 2007, a copy of the foregoing "BLR Group's Memorandum in Opposition to Defendant's Motion to Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

/s/ Timothy F. Noelker