No. 07-579C
(Judge Sweeney)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BLR GROUP OF AMERICA, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING DEFENDANT'S MOTION TO DISMISS

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

TODD M. HUGHES
Deputy Director

WILLIAM P. RAYEL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 616-0302
Facsimile: (202) 307-0972

July 11, 2008

Attorneys for Defendant

# TABLE OF CONTENTS

ARGUMENT . . . . . . . . . . 1

I. Process For Posting A Performance Evaluation On The Past Performance Information Retrieval System ("PPIRS database") . . . . . . . . . . 1

II. Process For Challenging An Air Force Performance Evaluation . . . . . . . . . . 3

III. This Court Should Not Transfer This Case To A Federal District Court Pursuant To 28 U.S.C. § 1631 Because A Transfer Would Not Be In The Interests Of Justice . . . . . . . . . . 5

A. BLR Has Not Shown That It Has Standing To Pursue Administrative Procedure Act ("APA") Claims In Federal District Court . . . . . . . . . . 6

B. BLR Has Failed To State An APA Claim . . . . . . . . . . 8

C. It Is Not In The Interests Of Justice To Transfer BLR's Complaint To Federal District Court . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . 10

Attachments:
Attachment 1: Air Force CPARS Guide, dated March 2006
Attachment 2: AFFARS Part 5342 (June 1, 2007)
Attachment 3: User Manual for CPARS, dated October 2005
Attachment 4: Declaration of Dennis Christopher-Joseph Moran
Attachment 5: Excerpts from Contract No. FA 4452-06-C-0003-P00004

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Brown v. United States,
74 Fed. Cl. 546 (2006) . . . . . . . . . . 6

Earnest v. United States,
33 Fed. Cl. 341 (1995) . . . . . . . . . . 9

Edelmann v. United States,
76 Fed. Cl. 376 (2007) . . . . . . . . . . 9

Heckler v. Chaney,
470 U.S. 821 (1985) . . . . . . . . . . 8, 9

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) . . . . . . . . . . 6, 7

Matthews v. United States,
72 Fed. Cl. 274 (2006) . . . . . . . . . . 6

Miami Nation of Indians of Indiana, Inc. v. United States Dep't of the Interior,
255 F.3d 342 . . . . . . . . . . 8

Myers Investigative and Security Services, Inc. v. United States,
275 F.3d 1366 (2002) . . . . . . . . . . 6

Russell v. United States,
78 Fed. Cl. 281 (2007) . . . . . . . . . . 9

Sanders v. United States Postal Serv.,
801 F.2d 1328 (Fed. Cir. 1986) . . . . . . . . . . 7

Solid Waste Agency of N. Cook County v. United States Army Corp of Engineers,
191 F.3d 845 (7th Cir. 1999), rev'd on other grounds, 531 U.S. 159 (2001) . . . . . . . . . 10

Steel Co. v. Citizens for a Better Env't,
523 U.S. 83 (1998) . . . . . . . . . . 6

Village of Elk Grove v. Evans,
997 F.2d 328 (7th Cir. 1993) . . . . . . . . . . 10

**STATUTES AND FEDERAL REGULATIONS**

48 C.F.R. § 42.1503(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

5 U.S.C. § 701(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1391(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1631 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BLR GROUP OF AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 07-579C |
| | ) | (Judge Sweeney) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL BRIEF
REGARDING DEFENDANT'S MOTION TO DISMISS

Pursuant to the Court's June 25, 2008 order, defendant, the United States, respectfully submits this supplemental brief. The information submitted in this supplemental brief highlights the fact that a performance evaluation is an administrative matter and that a challenge to a performance evaluation, or the manner in which a performance evaluation is displayed, is not a Contract Disputes Act ("CDA") claim. Furthermore, the Court should dismiss plaintiff's complaint, not transfer it to a Federal district court pursuant to 28 U.S.C. § 1631.

ARGUMENT

I. Process For Posting A Performance Evaluation On The Past Performance Information Retrieval System ("PPIRS database")

The Court ordered the Government to "describe, with particularity, the steps taken by the government to post a Contractor Performance Assessment Report ('CPAR') onto the Past Performance Information Retrieval System." At the time of BLR's evaluation, instructions for completing a CPAR were provided in the Air Force CPARS Policy Guide. Att. 1[1]; AFFARS §

[1] "Att. 1, p. __" refers to the page number of the Department of the Air Force CPARS Guide, dated March 2006, and attached to this brief as Attachment 1. This was the policy guide in effect at the time BLR's performance evaluation was conducted. The policy guide has since been superceded by the similar Department of Defense CPARS Policy Guide.

5342.1503 (June 1, 2007) (see Attachment 2). Either the Assessing Official, or an Assessing Official Representative, may complete the initial evaluation. Id. at 8. They do this by entering their evaluation into the electronic form on a Naval Sea Logistics Center ("Center") CPARS website. Att. 3, p. 4, 22-23, 26.[2] If an Assessing Official Representative fills out the initial evaluation, the evaluation is sent to the Assessing Official for review. Att. 1, p. 8; Att. 3, p. 23. The Assessing Official performs a quality review of the entire evaluation. Att. 1, p. 8. At this point, if the Assessing Official agrees with the CPAR as written, she presses the "Validate and Send to the Contractor" button and the initial evaluation is sent electronically, through the Center website, to the contractor. Id. at 9; Att. 3, p. 26.

The contractor then has 30 calendar days to review, comment if desired, and return the evaluation to the Assessing Official. Att. 1, p. 9; see also 48 C.F.R. § 42.1503(b). If the contractor does not agree with an aspect of the evaluation, it can input its comments in Block 22 of the CPAR, "Contractor Comments," and sign Block 23, "Contractor Representative Signature." Id. at A-4-9; Att. 3, p. 29-30. The contractor representative then clicks the"Validate and Send to the Assessing Official" button to return the evaluation, with contractor comments, to the Assessing Official. Att. 3, p. 30. After review of the contractor comments, the Assessing Official may revise the evaluation, including the narrative. Att. 1, p. 9. If disagreement remains after the Assessing Official has considered the contractor's comments (and/or a meeting with the contractor), or if the contractor has not responded, the Assessing Official then forwards the

[2] "Att. 3, p. __" refers to the page number of the User Manual for CPARS, dated October 2005, and attached to this brief as Attachment 3. This was the User Manual in effect at the time BLR's performance evaluation was conducted. It was superceded by a similar manual in January 2008.

CPAR to the Reviewing Official, for his review. Id. at 10. In this case, the Reviewing Official was Eric Hassenplug. The Reviewing Official makes a decision as to the merit of the contractor's rebuttal and may provide narrative comment on the in Block 24, "RO Comments." Id. at 10, A4-9. The Reviewing Official then signs Block 25, "RO Signature." Id. at A4-9. Once this is done, the Reviewing Official clicks the "Validate and Close the CPAR" button to finalize the CPAR. Att. 3, p. 31. At this point, the CPAR is closed and considered complete. Id. at 5. On a weekly basis, the completed CPARs are copied automatically into the PPIRS database, which is administered by the Center. See id.; Moran Decl. ¶ 3.[3]

The process by which a CPAR is entered into the PPIRS database makes clear that the manner in which the evaluation is displayed in the CPAR database is not a final decision by the contracting officer for CDA purposes. Rather, it is an automated process administered by the Center. Therefore, the Court should dismiss BLR's claim for lack of subject matter jurisdiction.

## II. Process For Challenging An Air Force Performance Evaluation

The Court ordered the Government to "describe, with particularity, the process available to contractors who wish to contest a performance evaluation, both at the agency level and above." A contractor dissatisfied with its initial performance evaluation, as submitted by the Assessing Official, is entitled to submit written comments and have a meeting with the Assessing Official or Reviewing Official, in an attempt to have the evaluation revised favorably. Att. 1, p. 9; 48 C.F.R. § 42.1503(b) ("Contractors shall be given a minimum of 30 days to submit comments, rebutting statements, or additional information."). The written comments are limited

---

[3] "Moran Decl. ¶ __" refers to the paragraph number of the declaration of Dennis Christopher-Joseph Moran of the Naval Seal Logistics Center, which is attached to this brief as Attachment 4.

to 16,000 characters or approximately three pages. Att. 1, p. A4-9. If the contractor desires a meeting to discuss the CPAR, it must be requested, in writing, no later than seven calendar days from the receipt of the CPAR. Id. at 9. This meeting will be held during the contractor's review period. Id. After review of the contractor comments, the Assessing Official may revise the evaluation, including the narrative. Id. If this happens, the Assessing Official will notify the contractor of any revisions made to a report as a result of the contractor's comments. Id. The revised report is not sent to the contractor for further comments. Id. The contractor will have access to both the original and revised reports in the CPARS when the Government finalizes the evaluation. Id.

The Assessing Official is also responsible for forwarding the evaluation to the Reviewing Official when there remains a disagreement between the Assessing Official and contractor, when requested by the contractor, or when the contractor fails to respond to the evaluation. Id.; see also 48 C.F.R. § 42.1503(b) ("Agencies shall provide for review at a level above the contracting officer to consider disagreements between the parties regarding the evaluation."). The Reviewing Official provides the check-and-balance when there is disagreement between the Assessing Official and the contractor. Att. 1, p. 10. The Reviewing Official must review and sign the evaluation when the contractor indicates non-concurrence with the CPAR. Id. The Reviewing Official has the authority to provide narrative comment, which supplements the comments provided by the Assessing Official. Id. Once this is done, the Reviewing Official clicks the "Validate and Close the CPAR" button to finalize the CPAR. Att. 3, p. 31. At this point, the CPAR is closed and considered complete. Id. at 5; see also 48 C.F.R. § 42.1503(b)

("The ultimate conclusion on the performance evaluation is a decision of the contracting agency."). We are not aware of any further administrative review of the CPAR.

The manner in which a CPAR's is challenged by a contractor highlights the fact that the completed CPAR is not a final decision by a contracting officer for CDA purposes, but rather the completion of an administrative process. There is no requirement that the contracting officer perform the duties of the Assessing Official, Assessing Official Representative or Reviewing Official.[4] Therefore, the Court should dismiss BLR's claim for lack of subject matter jurisdiction.

III. This Court Should Not Transfer This Case To A Federal District Court Pursuant To 28 U.S.C. § 1631 Because A Transfer Would Not Be In The Interests Of Justice

The Court ordered the Government to address whether transfer, pursuant to 28 U.S.C. § 1631, is appropriate, if the Government believes that this action should be before a Federal district court.[5] Pursuant to 28 U.S.C. § 1631, "[w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interests of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . ." Therefore, this Court may transfer a case when the following three elements are met: 1) the transferring court lacks subject matter jurisdiction; 2)

[4] The contracting officer was the Assessing Official for purposes of this CPAR.

[5] We note that, in its June 25th order, the Court appears to have misunderstood our statement that we are "not arguing that BLR is not entitled to judicial review of its performance evaluation . . ." We did not mean to imply that BLR is entitled to judicial review of its performance evaluation. Rather, we were merely stating that the issue of whether BLR could potentially obtain relief in another Court is irrelevant to the issue of whether this Court possesses jurisdiction to entertain BLR's suit. Neither party, nor the Court, had raised the issue of transfer at that time.

the case could have been filed in the court receiving the transfer at the time it was filed in the transferring court; and 3) the transfer is in the interests of justice. Brown v. United States, 74 Fed. Cl. 546 (2006); Matthews v. United States, 72 Fed. Cl. 274, 280 (2006) (citation omitted). Although this Court lacks subject matter jurisdiction over BLR's complaint, BLR has not met the other two elements required for a transfer.[6]

A. BLR Has Not Shown That It Has Standing To Pursue Administrative Procedure Act ("APA") Claims In Federal District Court

BLR has not shown that it has standing to challenge its performance evaluation. Standing is a threshold jurisdictional issue. Myers Investigative and Security Services, Inc. v. United States, 275 F.3d 1366, 1369 (2002) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-04 (1998)). "The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations omitted). In order to establish standing, BLR must have prove that: 1) it suffered an "'injury in fact' - an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.''"; 2) there is "a causal connection between the injury and the conduct complained of," i.e., the injury must be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the

[6] If the Court were to transfer this case, the most logical place to transfer the case would be to the United States District Court for the Southern District of Illinois. According to the general Federal venue statute, a civil action against the United States may be brought "in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred . . or (3) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e). The principal place of performance for the contract at issue was Scott Air Force Base, see Att. 5, which is located within the Southern District of Illinois. While BLR is a Texas corporation, transfer to the Southern District of Illinois would be more appropriate in this case since that is where the contract at issue was performed and the alleged events leading up to the lawsuit took place.

independent action of some third party not before the court"; and 3) it is "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." Lujan, 504 U.S. at 560-61 (citations omitted).

BLR's only potential injury from a negative performance evaluation would be the loss of a future Government contract because of its poor performance evaluation. BLR has neither alleged, nor proven, that it has lost any Government contracts that it bid upon because of the performance evaluation at issue. Furthermore, it is entirely "conjectural" to suggest that it will lose a future Government contract based upon this performance evaluation. Numerous other factors can go into a decision to award a contract, such as, contractor personnel, technical merit of the specific proposal, past performance for other contracts and cost. To suggest that the performance evaluation at issue will cost BLR a Government contract in the future is too speculative to form the basis for Article III standing.

To suggest that BLR will lose a Government contract in the future based upon the manner in which its performance evaluation is displayed on the PPIRS database is even more speculative. BLR is essentially suggesting that source selection personnel reading the evaluation in the future will be too lazy to read the entire evaluation. Compl. 11 ("The database's repetition of the Air Force's long narrative makes it twice as onerous for future procuring officials to discover BLR Group's responsive comments"). Such a suggestion is baseless and contrary to binding precendent. See Sanders v. United States Postal Serv., 801 F.2d 1328, 1331 (Fed. Cir. 1986) ("There is a strong presumption in the law that administrative actions are correct and taken in good faith. It takes 'well-nigh irrefragable proof' to overcome the presumption.") (citations

omitted). Therefore, BLR has neither alleged, nor proven, that it has standing to assert APA claims.

B. BLR Has Failed To State An APA Claim

The fact that BLR's complaint, on its face, fails to state a claim for relief pursuant to the APA, also militates against transfer. The APA provides that a "person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. BLR has not alleged a "legal wrong," nor have they alleged that they were "adversely affected or aggrieved" within the meaning of any "relevant statute."

Additionally, the manner in which a performance evaluation is displayed in the PPIRS system is a matter "committed to agency discretion by law" and, therefore, unreviewable. 5 U.S.C. § 701(a)(2). A matter is committed to agency discretion by law when the statute being administered "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Heckler v. Chaney, 470 U.S. 821, 830 (1985). "[I]f no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" Id. Here, BLR has not identified any "judicially manageable" statutory or regulatory[7] guidance

[7] We note that the Seventh Circuit has held that regulations, as well as statutes, can provide the standard against which to judge the agency's action. See Miami Nation of Indians of Indiana, Inc. v. United States Dep't of the Interior, 255 F.3d 342, 348.

that indicates how a performance evaluation should be displayed in the PPIRS database, nor are we are of any.[8]

C. It Is Not In The Interests Of Justice To Transfer BLR's Complaint To Federal District Court

Courts have found that it is in the interests of justice to transfer a case to another court where, for instance, the plaintiff is pro se, or where the plaintiff's claims would be time-barred if he were required to re-file in another court. See, e.g., Edelmann v. United States, 76 Fed. Cl. 376, 384 (2007) (finding that transfer would be in the interests of justice because otherwise claims would be time-barred); Russell v. United States, 78 Fed. Cl. 281, 290 (2007) (taking into consideration plaintiff's pro se status when determining that transfer would be in the interests of justice). In contrast, a transfer is not necessarily in the interest of justice "when the plaintiff may refile the complaint in the district court without penalty." Earnest v. United States, 33 Fed. Cl. 341, 344 (1995).

[8] There is also a question as to whether the substance of a performance evaluation is "a matter committed to agency discretion by law." While the Federal Acquisition Regulations provide some guidance regarding the procedure of completing a performance evaluation, the substance of the performance evaluation is left entirely to the agency's discretion. 48 C.F.R. § 42.1503(b) ("Agency evaluations of contractor performance prepared under this subpart shall be provided to the contractor as soon as practicable after completion of the evaluation. Contractors shall be given a minimum of 30 days to submit comments, rebutting statements, or additional information. Agencies shall provide for review at a level above the contracting officer to consider disagreements between the parties regarding the evaluation. The ultimate conclusion on the performance evaluation is a decision of the contracting agency.") (emphasis added). While the Air Force CPARS Guide provided some guidance to agency personnel regarding how to evaluate contractors, see e.g., Att 1., pp. A4-5 - A4-9, a policy guide, rather than a regulation, may not be capable of providing a "law to apply" in the Seventh Circuit. See Heckler v. Chaney, 470 U.S. at 836 ("We also find singularly unhelpful the agency 'policy statement' . . . We would have difficultly with this statement's vague language even if it were a properly adopted agency rule.") (emphasis added).

No compelling circumstances exist here for transferring BLR's case. The Seventh Circuit has indicated that the statute of limitations in an APA action is six years. Solid Waste Agency of N. Cook County v. United States Army Corp of Engineers, 191 F.3d 845, 853 (7th Cir. 1999), rev'd on other grounds, 531 U.S. 159 (2001); Village of Elk Grove v. Evans, 997 F.2d 328, 331 (7th Cir. 1993). The Air Force did not issue the final CPAR until on or about February 7, 2008. Compl. 10. Also, BLR is not a pro se individual, but a corporation that has retained counsel to represent it in this action. Therefore, if the Court dismisses BLR's complaint for lack of subject matter jurisdiction, BLR can easily file an APA suit in the appropriate district court, if it believes that it has a viable APA claim.

Therefore, the Court need not even reach issues such as whether the BLR has standing to assert APA claims or whether BLR can state legally cognizable APA claims because, even if BLR can bring APA claims in Federal district court, a transfer would not be in the interests of justice. Accordingly, the Court should not transfer this case pursuant to the 28 U.S.C. § 1631.

## CONCLUSION

For the foregoing reasons and the reasons stated in our motion to dismiss and reply brief, the Court should dismiss BLR's complaint.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Todd M. Hughes

TODD M. HUGHES
Deputy Director

/s/ William P. Rayel

WILLIAM P. RAYEL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 616-0302
Facsimile: (202) 307-0972

July 11, 2008

Attorneys for Defendant