# In the United States Court of Federal Claims

No. 07-579C
(Filed: December 16, 2010)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| BLR GROUP OF AMERICA, INC., * | |
| * | Motion for Reconsideration; Jurisdiction; |
| Plaintiff, * | Contract Disputes Act of 1978, 41 U.S.C. |
| * | §§ 601-613; Performance Evaluation; |
| v. * | Definition of Claim; Intent to Assert a |
| * | Claim; Facts Surrounding Purported |
| THE UNITED STATES, * | Assertion of a Claim; Reflectone; |
| * | Transamerica Insurance Corp. |
| Defendant. * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Timothy F. Noelker, St. Louis, MO, for plaintiff.

William P. Rayel, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

In this case, plaintiff BLR Group of America, Inc. alleges that government personnel prepared and disseminated an unfair and inaccurate evaluation of its performance under a contract with the United States Air Force ("Air Force") and requests appropriate nonmonetary relief under the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 601-613 (2006). It is perhaps unsurprising, given the nature of plaintiff's request, that the attempts to ascertain the court's jurisdiction in this matter have been made in a seemingly piecemeal fashion. Unsuccessful in its first motion to dismiss this case on jurisdictional grounds, defendant, raising new arguments, sought reconsideration and prevailed. Now plaintiff seeks reconsideration, arguing that the court applied an incorrect legal standard in declining to exercise jurisdiction or, alternatively, that it can meet the standard articulated by the court with newly presented evidence. Thus, once again, the court is required to examine plaintiff's jurisdictional argument. After a searching review of the parties' contentions, the court concludes that it cannot exercise jurisdiction over plaintiff's complaint and therefore denies plaintiff's motion for partial reconsideration.

# I. BACKGROUND

The following background information is taken from the court's November 25, 2008, and August 16, 2010 decisions.[1]  On April 14, 2006, the Air Force awarded plaintiff a contract to provide Air Traffic Management support services.  The Air Force then terminated the contract for its convenience on September 26, 2006.  After the contract's termination, the Air Force evaluated plaintiff's performance under the contract in a Contractor Performance Assessment Report ("CPAR").  Although plaintiff had previously requested that the Air Force employee charged with assigning and supervising its work be replaced due to her purported bias against it, she was permitted to assist in the preparation of plaintiff's evaluation.  The ratings and narrative included in the evaluation were generally unfavorable to plaintiff.  The contracting officer, Nancy Kreke, signed the evaluation on November 21, 2006, in her role as the Assessing Official.[2]  Plaintiff subsequently met with Air Force personnel to discuss the evaluation on January 8, 2007, but the Air Force personnel declined to respond to the inquiries posed by plaintiff.

The CPAR included a specific section titled "Contractor Comments" to permit plaintiff to respond to the Air Force's evaluation.  Plaintiff submitted its comments on January 12, 2007, expressing, at length, its concern about the evaluation's inaccuracies and the possible biases of the supervisor who helped prepare the evaluation.  At the conclusion of its comments, plaintiff indicated that it did not concur with the unfavorable assessment of its performance and requested that its performance be reevaluated.  Despite plaintiff's objections, the Reviewing Official approved the evaluation on February 6, 2007,[3] without making any "substantive modifcation[s]."  The next day, the Air Force disseminated the CPAR to other procurement officials via the Past Performance Information Retrieval System ("PPIRS").

Plaintiff filed a complaint in this court on August 1, 2007, asserting two claims and seeking declaratory and injunctive relief.  In its first claim for relief, plaintiff requested that the court "direct the Air Force to revise the CPAR to make it fair and accurate and consistent with the facts, or, alternatively, to rescind the CPAR in its entirety."  In its second claim for relief, plaintiff requested that the court direct the Air Force to revise or rescind the PPIRS version of the CPAR.  Defendant moved to dismiss plaintiff's complaint for lack of jurisdiction.  In its

---

[1]  A more comprehensive recitation of the factual and procedural history can be found in those decisions.  See BLR Group of Am., Inc. v. United States, 94 Fed. Cl. 354 (2010); BLR Group of Am., Inc. v. United States, 84 Fed. Cl. 634 (2008).

[2]  The Assessing Official is responsible for, among other things, reviewing the evaluation narrative prepared by her representatives.

[3]  The Reviewing Official is responsible for reviewing, commenting on, and then issuing a CPAR when the CPAR reflects disagreement between the Assessing Official and the contractor.

November 25, 2008 decision, the court concluded that it possessed jurisdiction to entertain plaintiff's first, but not its second, claim for relief.

Defendant then sought reconsideration of the court's finding of jurisdiction,[4] dismissal of plaintiff's complaint on mootness grounds due to the removal of the CPAR from the PPIRS, or, in the alternative, summary judgment in its favor.  In its August 16, 2010 decision, the court declined to find the case moot but, based on the new arguments raised by defendant, concluded that it lacked jurisdiction over plaintiff's first claim for relief.  In particular, it held that although plaintiff's January 12, 2007 response to the Air Force's evaluation appeared to fall within the definition of a CDA claim by providing notice to the contracting officer of the basis of the claim and the relief sought, it nevertheless could not be a CDA claim.  It explained that because plaintiff's response was submitted to Ms. Kreke in her role as Assessing Official as part of the performance evaluation procedures established by the Federal Acquisition Regulation ("FAR"), "a context wholly separate and distinct from the CDA claim process," she was only obligated "to treat the response as contractor comments to a performance evaluation . . . , and not also as a CDA claim."  The court further concluded that there could be no contracting officer decision or deemed denial because "[i]f a contracting officer cannot be expected to understand comments from a contractor regarding a performance evaluation to be a CDA claim requesting a decision, then the contracting officer certainly is not obligated to issue a decision where no claim has been submitted."  Plaintiff now seeks reconsideration of these two conclusions.

## II.  STANDARD OF REVIEW

A motion for reconsideration is a request for extraordinary relief and is not to be used by a dissatisfied party to relitigate the case.  Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004); Four Rivers Invs., Inc. v. United States, 78 Fed. Cl. 662, 664 (2007); Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd per curiam, 250 F.3d 762 (Fed. Cir. 2000) (table).  Thus, such a motion "does not provide an occasion for a party 'to raise arguments that it could have raised previously, but did not'" or to "'reassert arguments that the Court already has considered.'"  Four Rivers Invs., Inc., 78 Fed. Cl. at 664 (quoting Browning Ferris Indus., Inc. & Subsidiaries v. United States, No. 05-738T, 2007 WL 1412087, at *1 (Fed. Cl. May 10, 2007)).  Rather, the court may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice.  See R. Ct. of Fed. Cl. 59(a)(1) (allowing the court to grant a motion for reconsideration "for any reason for which a new trial has heretofore been granted in an action at law in federal court" or "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court"); Bd. of Trs. of Bay Med. Ctr. v. Humana Military Healthcare Servs., Inc., 447 F.3d 1370, 1377 (Fed. Cir. 2006); Fla. Power & Light Co. v. United States, 66 Fed. Cl. 93, 96 (2005).  "The decision whether to grant

---

[4]  The court treated defendant's motion for reconsideration as a renewed motion to dismiss plaintiff's complaint for lack of jurisdiction.

reconsideration lies largely within the discretion of the [trial] court."  Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990).

## III. DISCUSSION

In its motion, plaintiff first argues that the court has impermissibly limited the definition of a CDA claim by holding that a contractor's comments regarding an agency's evaluation of its performance, which otherwise appear to meet the definition, cannot be a claim because they were submitted in "a context wholly separate and distinct from the CDA claim process."  In particular, plaintiff contends that the court has misconstrued the definition of a CDA claim, asserting that although the definition expressly excludes certain demands for monetary relief, it contains no such exclusions related to demands for nonmonetary relief.  Defendant argues that the court properly declined to treat plaintiff's submission as a CDA claim.  After careful consideration of the parties' arguments, the court finds that plaintiff has not established a basis for reconsideration.

The CDA requires that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision."  41 U.S.C. § 605(a).  To determine whether a contractor's submission constitutes a claim, the court must consider the regulations "implementing the CDA, the language of the contract in dispute, and the facts of the case."  Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc).  The regulations implementing the CDA provide the following definition:

> "Claim" means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.  However, a written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under the Contract Disputes Act of 1978 until certified as required by the Act.  A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim.  The submission may be converted to a claim, by written notice to the contracting officer . . . , if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

FAR § 2.101; accord id. § 52.233-1.  There is "no requirement in the [CDA] that a 'claim' must be submitted in any particular form or use any particular wording."  Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987); see also Transam. Ins. Corp. v. United States, 973 F.2d 1572, 1578 (Fed. Cir. 1992) (noting that "certain 'magic words' need not be used and that the intent of the 'claim' governs").  "All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim."  Contract Cleaning Maint., Inc., 811 F.2d at 592.  Thus, the contractor's request for a decision from the contracting officer need not be explicit; it may be implied.  James M. Ellett Constr. Co. v. United States, 93

F.3d 1537, 1543 (Fed. Cir. 1996); see also Transam. Ins. Corp., 973 F.2d at 1576 ("The statute's broad language demonstrates that as long as what the contractor desires by its submissions is a final decision, that prong of the CDA claim test is met.").

In its parsing of the regulatory definition set forth above, plaintiff interprets the enumeration of exceptions that apply to claims for monetary relief, but not to claims for nonmonetary relief, as an intent to preclude the reading of any exceptions into what may constitute a claim for nonmonetary relief.  Plaintiff's interpretation finds support in the law.  See Horner v. Andrzjewski, 811 F.2d 571, 575 (Fed. Cir. 1987) ("[A]s a general rule of statutory construction, the expression of one exception indicates that no other exceptions apply."); 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47.23, at 418 (7th ed. 2007) ("The enumeration of exclusions from the operation of a statute indicates that the statute should apply to all cases not specifically included."); see also Andrus v. Glover Constr. Co., 446 U.S. 608, 616-17 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").  But see 2A Singer & Singer, supra, at 420 ("The maxim is . . . inapplicable where the listed exceptions were obviously not meant to be the only exceptions."). Nevertheless, plaintiff's overarching argument–that the court has impermissibly limited the definition of a CDA claim–cannot stand.

The court reaches its conclusion on two grounds.  First, in determining whether a contractor's submission constitutes a CDA claim, the court must examine the intent of the contractor as expressed in the submission.  Transam. Ins. Corp., 973 F.2d at 1578.  As the court noted in its decision, plaintiff's January 12, 2007 response to the Air Force's evaluation appears to fall within the definition of a CDA claim by providing notice to the contracting officer of the basis of the claim and the relief sought.  However, what the response did not do was alert Ms. Kreke that plaintiff was seeking a decision from her, in her role as contracting officer, awarding relief that was separate from the relief available through the FAR's performance evaluation procedures.  Those procedures gave Ms. Kreke, in her role as Assessing Official, the power to grant the relief sought by plaintiff–reevaluation of its performance.  And, plaintiff provided no hint in its response that it intended the response to serve as a request for relief outside those procedures pursuant to the CDA.  Thus, Ms. Kreke had no notice that plaintiff intended that she treat the response as a CDA claim.

Second, the court is required, when determining whether a contractor has submitted a CDA claim, to look beyond the definition of a CDA claim and take into account the particular facts of the case.  Reflectone, Inc., 60 F.3d at 1575.  Here, plaintiff was entitled, pursuant to the FAR, to submit "comments, rebutting statements, or additional information" in response to the Air Force's evaluation.  FAR § 42.1503(b).  And, the Air Force was required to disseminate plaintiff's comments with its evaluation.  Id.  Plaintiff was aware that it was entitled to submit a response and that its response would be included with the evaluation as part of the CPAR.  See BLR Group of Am., Inc., 84 Fed. Cl. at 637 (describing Ms. Kreke's communication with plaintiff regarding its entitlement to submit a response and indicating that the CPAR included a

space for "contractor comments").  Indeed, it submitted a response and that response was included in the CPAR.  <u>BLR Group of Am., Inc.</u>, 94 Fed. Cl at 360.  These facts demonstrate that plaintiff, in submitting a response to the Air Force's evaluation, was acting within the confines of the FAR's performance evaluation procedures and was not submitting a claim pursuant to the CDA.

In sum, looking at plaintiff's intent when submitting its response to the Air Force's evaluation and the facts surrounding plaintiff's response, it is evident that the response cannot constitute a claim pursuant to the CDA.  And, as the court has previously held, without a valid CDA claim, there can be no contracting officer decision or deemed denial.[5]  Accordingly, the court declines to reconsider its decision based on plaintiff's first argument.

Plaintiff's second argument is that it did, in fact, submit a valid CDA claim to the contracting officer that meets the criteria set forth by the court.  In support of this argument, it produces, for the first time, a January 23, 2007 electronic-mail message sent from its counsel to Ms. Kreke in response to her January 11, 2007 electronic-mail message to counsel.[6]  Pl.'s Exs. O, P.  The relevant portion of plaintiff's counsel's message provides:

> It is our understanding, based on the USAF CPARS Guide, that you have the discretion to change the initial CPARS ratings and narrative in response to BLR Group's concerns, presented at the meeting on 9 January 2007 and in its follow-up written submission, and further detailed in BLR Group's formal responses to the CPARS assessment (submitted on 12 January 2007).  Moreover, as Assessing Officer, the USAF CPARS Guide charges you with conducting a "[q]uality review of the entire evaluation."  Irrespective of the format of the 9 Jan meeting, we believe that BLR Group has raised issues, both substantive and procedural, that demonstrate that the CPARS assessment as originally written is

---

[5] Further, plaintiff's contention that the Reviewing Official's approval and dissemination of the CPAR constitutes a contracting officer's decision is without merit.  The Reviewing Official was not the contracting officer, and plaintiff has provided no legal support for the proposition that someone other than a contracting officer can issue an appealable decision under the CDA.  Nor has plaintiff presented any evidence that the Reviewing Official was acting as the contracting officer when he approved and disseminated the CPAR.  The fact that the Reviewing Official was the contracting officer's direct supervisor is irrelevant.

[6] In its September 29, 2010 order, the court indicated that, in the interest of justice, it intended to exercise its discretion and consider this electronic-mail message even though plaintiff provided it to the court for the first time on reconsideration.  Nevertheless, the court recognizes that plaintiff had ample opportunity to submit the message in response to defendant's renewed motion to dismiss for lack of jurisdiction, in which defendant argued that plaintiff could not have been asserting a claim pursuant to the CDA because the parties were acting within the procedures outlined in the FAR for conducting performance evaluations.

not a fair or accurate evaluation of BLR Group's performance under the contract. Accordingly, we hope that you will exercise your power to change that assessment.

   In the alternative, we request that you withdraw the CPARS assessment because contract performance clearly was not completed within the meaning of FAR 42.1502, as explained more fully in BLR Group's Questions in Follow-Up to the 9 January 2007 meeting, submitted to you on 10 January 2007.

Pl.'s Ex. O at 3. Plaintiff's counsel sent this message after plaintiff submitted its comments to the Air Force's evaluation on January 12, 2007, but before the Reviewing Official approved and disseminated the CPAR on February 7, 2007.

   Plaintiff contends that the January 23, 2007 electronic-mail message was sent to Ms. Kreke outside of the FAR's performance evaluation procedures and that, therefore, it satisfies the definition of a CDA claim. Defendant argues that the message was not "wholly separate and distinct" from the FAR's performance evaluation procedures and did not provide Ms. Kreke, in her role as contracting officer, sufficient notice that plaintiff intended to assert a claim pursuant to the CDA. A thorough examination of the parties' arguments leads the court to conclude that plaintiff cannot prevail.

   As with the previously discussed contractor comments, the court scrutinizes the intent of the January 23, 2007 electronic-mail message sent to Ms. Kreke, as reflected by its contents, and the facts of the case that illustrate the context within which the message was sent to Ms. Kreke. Reflectone, Inc., 60 F.3d at 1575; Transam. Ins. Corp., 973 F.2d at 1578. Although it is true that the FAR's performance evaluation procedures do not contemplate any communications from the contractor to the evaluating agency once the contractor has submitted its official written comments regarding the agency's evaluation, it is apparent, upon reading the January 23, 2007 message as a whole, that plaintiff's counsel was attempting to persuade Ms. Kreke to change or withdraw the Air Force's evaluation within the FAR's performance evaluation procedures. Plaintiff twice invoked the Contractor Performance Assessment Reporting System Guide as the source of Ms. Kreke's power to amend or withdraw the evaluation, while making no reference to Ms. Kreke's power to make those same changes in her role as contracting officer. In other words, the message contains no indication that counsel intended to assert a claim under the CDA. Moreover, given that the Reviewing Official had not yet reviewed the contested evaluation or disseminated the evaluation through the PPIRS, the factual context within which counsel sent the message to Ms. Kreke was the FAR's performance evaluation process and not the CDA's dispute resolution process.

   In sum, examination of the intent of, and facts surrounding, the January 23, 2007 electronic-mail message sent to Ms. Kreke leads the court to conclude that the message cannot constitute a claim pursuant to the CDA. And, because the message is not a valid CDA claim, it

cannot serve as the basis for a contracting officer's decision or deemed denial.  Accordingly, the court declines to reconsider its decision based on plaintiff's second argument.

### IV.  CONCLUSION

For the reasons set forth above, the court **DENIES** plaintiff's motion for reconsideration.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge